AO 241
(Rev. 10/07)

Page **2**

## PETITION UNDER 28 U.S.C. §2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| UNITED SATES DISTRICT COURT | District: **SOUTHERN DISTRICT OF FLORIDA** | |
|---|---|---|
| Name (under which you were convicted):  Fredrick J. Livingston | | Docket or Case No.:  12 CF-18454 |
| Place of Confinement:  **South Bay Correctional Facility, Post Office Box - 7171 South Bay, Florida. 33493-7171** | Prisoner No.:  **T56652** | |
| Petitioner (include the mane under which you were convicted)  Fredrick J. Livingston           v. | Respondent (authorized person having custody of petitioner)  **RICKY DIXON SEC. F.D.O.C.** | |
| The Attorney General of the State of:           **FLORIDA – ASHLEY MOODY**  8:23 cv. 114 MSS-CPT | | |

Honorable court hold this **PETITION** Petitioner requests this petition in abeyance for counsel to Amend.

1.  (a) Name and location of court, that entered the judgment of conviction you are challenging:

    Circuit  Hillsborough County

    (b) 03-012101 CF 10P

    12 -CF-18454

2.  (a) Date of judgment of conviction: ~~Aug 8 18~~ July 2, 2013

    (b) Date of sentence

    Aug 8, 2013

3.  Length of sentence:  15 yrs  P.R.R.

4.  In this case, were you convicted on more than one count or of more than one crime?     { } Yes [✓] No

5.  Identify all crimes of which you were convicted and sentenced in this case:

    Robbery

    Provided to South Bay Corr. and Rehab. Facility
    on ___1-11-23___ for mailing.

6.  (a) What was your plea? (Check one)

    [✓] (1) Not guilty

    [ ] (2) Guilty

    [ ] (3) Nolo contendere

    [ ] (4) Insanity plea

P a g e **3**

AO 241
(Rev. 10/07)

    (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty and what did you plead not guilty to?

    (c) If you went to trial, what kind of trial did you have? (Check one)

        ☑ Jury  [ ] Judge only

7. Did you testify at a pretrial hearing, trial, or a post trial hearing?

        ☑ Yes [ } No

8. Did you appeal from the judgment of conviction?

        [☑ Yes [ } No

9. If you did appeal, answer the following:

    (a) Name of court: 2 D.C.A. R.

    (b) Date of result and citation, (if you know): 2D-13-4502

    (c) Result:

    (d) Date of result, (if you know): 3/31/17 Fla. Supreme Court denied 10/24/17

    (e) Citation to the case (if you know):

    (f) Grounds raised: 1.) peper peremp. strike of juror, (2.) Motion for J.O.A. (3.) Motion for New Trial (4.) Motion to interview juror, (5.) Motion to continue sentencing

    (g) Did you seek further review by a higher state court? yes  [ } Yes [ } No

    If yes, answer the following:

    (1) Name of Court: FLA. Supreme court.

    (2) Docket or case number (if you know) SC 17-1129

    (3) Result: Date of result and citation, if known: denied

    (4) Date of result (if you know): 10/24/17

AO 241
(Rev. 10/07)

    (5) Citation to the case (if you know):

    (6) Grounds raised:

(h) Did you file a petition for certiorari in the United Sates Supreme Court?      [ ] Yes [✓] No

    If yes, answer the following:

    (1) Docket or case number (if you know)

    (2) Result:

    (3) Date of result:

    (4) Citation to the case (if you know):

10.    Other than a direct appeal listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    [✓] Yes [ ] No

11.    If your answer to 10 was "yes," give the following information:

    (a)  (1) Name of court:  Circuit Court Hillsborough County

        (2) Docket or case number (if you know)  12CF-18454

        (3) Date of filing (if you know):  10/19/18

        (4) Nature of the proceeding:  Motion for post conviction relief

        (5) Grounds raised:

        ①Failure to impeach Alex Mode ② Failure to investigate and call three material witness. ③ Failure to file motion to suppress Id. ④ Failure Enforce Agreement to dismiss ⑤ Cumulative effect ⑥ Lower court abused discretion in allowing minority strike ⑦

        (6) Did you receive a hearing where evidence was given in your petition, application, or motion? [✓] Yes [ ] No

        (7) Result:  Denied

        (8) Date of result (if you know):

        11/16/21

AO 241
(Rev. 10/07)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know)

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given in your petition, application, or motion?

        [ ] Yes [ ] No

    (7) Result:

    (8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know)

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

PET REQ CT HILLS

AO 241
(Rev. 10/07)

Page 6

(6) Did you receive a hearing where evidence was given in your petition, application, or motion? [  } Yes [  } No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action on your petition, application, or motion?

(1) First petition:          [✓]Yes    [ ]No

(2) Second petition:      [ ]Yes    [ ]No

(3) Third Petition:        [ ]Yes    [ ]No

(e)  If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United State. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

Caution:  To proceed in the federal court, you must ordinarily first exhaust (use up) your state-court remedies on each ground on which you request action by the federal court. Also if you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** Counsel Was Ineffective For Failing To Impeach Alex Mode With His Deposition, Which Caused Prejudice,

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Counsel was ineffective for failing to impeach Alex Mode with his deposition, which caused Prejudice, Trial counsel's performance fell below the required standard of effective assistance of counsel guaranteed by the Constitution when he failed to impeach Mr. Mode's trial testimony. (See; attachment A.)

(b) If you did not exhaust your state remedies on Ground One, explain why:

see,
Attachment A,
with statements he made during his deposition
concerning the events.

According to Mr. Mode's deposition, he was asked what
color the jacket was that the perpetrator was wear-
ing, and he responded, "black," and then he was
asked, "And did it have white also?" and he respond-
ed, "No, not that I noticed, I just noticed he had a
white undershirt." He was then asked whether he told
the deputy the jacket was black and white, and
he said he did not remember, but he thought he
told him it was a black jacket with a white shirt.
Then he was asked if he remembered telling the
deputy it was a black jacket with white stripes,
and he responded, "I might have told the deputies
that, but it was supposed to be a white shirt." He
was asked a second time if he remembered telling
the deputy it was a black jacket with white stripes,
and he responded again, "I supposedly if it is in
the records then yeah, but it was supposed to
be a white shirt." He indicated what stood out to him
was the hair, black jacket, and white shirt because
he was wearing all dark colors and then the
one white shirt. He was asked if he saw any stri-
pes on the jacket, and he stated he did not recall.
However, he subsequently stated he told the dep-
uty it was a black jacket and white shirt, and
the deputy got it wrong when he wrote that it was
a black jacket with stripes. He later reiterated
again that he saw a black jacket with a white shirt
and he did not recall any stripes on the jacket.
See, Portion of Mode's Depositions, pgs. 13-15, 18, 20-
21, 26, 31-33, 46-47, 50, attached as Exhibit J.
        Thus, based on Mr. Mode's deposition testimony,

it was clear that his description of the perpet-
rator's clothing was a black jacket and white shirt
underneath, and he never stated or agreed that
the black jacket had stripes down the front of it.
However, Mr. Mode gave inconsistent testimony at trial
of the perpetrator's clothing description. During
his direct examination, he stated the perpetrator
was wearing a black jacket with two white stripes
on it, and he motioned on his body that the
two white stripes were down the perpetrator's chest,
and he stated he was also wearing a white undershirt.
During cross-examination, Mr. Mode confirmed the
perpetrator was wearing a black jacket with white
stripes; however, he stated before he had seen the photo
of the Defendant taken by law enforcement that night
after his arrest, "the only thing I could really distinct
(sic) remember is the facial structure and what his
clothing was. He was wear(sic) dark clothes, dark pants,
black jacket and a white undershirt." Counsel asked
him if a black jacket was common, and he agreed it
was common, and then counsel asked if he had ever
seen a jacket with stripes before, and he respond-
ed, "no," but he had seen one that night. Counsel
attempted to impeach Mr. Mode with his deposition,
but only as it related to whether the jacket had a
hood, and not at all pertaining to the white stripes
on the jacket, which was deficient performance based
on Mr. Mode's deposition testimony that there were no
white stripes on the perpetrator's jacket. See, Exhibit
A, Pgs. 95, 114-15, 118-20.
    Additionally, according to Mr. Mode's deposition,
when asked if he was able to say that the
perpetrator did not have a tattoo on his face,

he responded, "yes. None that I recall recall or remember." He was then asked "... if he did have a tattoo on his face, would there be any reason why you wouldn't have noticed it?" and he responded, "maybe if it was behind his neck (indicating) or it was like some lower region or something, then most likely not." Counsel then reiterated, "you agree if it was like on his cheek, there would be no reason why you wouldn't have seen that correct?" and he responded, "I guess so, yes." He was subsequently asked whether he made a mistake in identifying the Defendant if he has a tattoo on his cheek, and he responded, "I'm not sure, but pretty much if he did have a tattoo on his cheek, then I don't remember seeing it...." and he said he was nervous that night. He was asked, And if he has got a tattoo on his face, and you didn't see it, does that mean that you might have made a mistake," and he responded "I'm not sure because I know that to me, I know that I saw him and I know that it was him 100 percent, so I'm not sure if he had a tattoo or not then, but I knew that when I approached him in the cop car that I saw his face and clearly don't remember seeing a tattoo, but if he did have a tattoo then I'm not sure." See, Exhibit J, pgs. 28, 44-45.

Thus, based on Mr. Mode's deposition testimony, he expressed some uncertainty about his identification if the Defendant in fact had a tattoo, which he agreed he did not see on the perpetrator. Also, when confronted in deposition as to any reason why he would not have noticed a tattoo in plain view on the cheek, Mr. Mode provided no real reason. However, at trial, Mr. Mode stated now that they were under the lights,

he could see a dark mark on his face that he could not see on the night of the incident, even though he had been about two feet away from the perpetrator. He stated he did not recall a tattoo because the tattoo was "very small" and it was "kind of dark outside," and "I really wouldn't have noticed it," and "we're in better lighting." See, Exhibit A, pgs. 104, 112, 121. Contrary, to Mr. Mode's deposition, Mr. Mode provided numerous excuses at trial as to why he did not see the facial tattoo, to justify his omission of the tattoo from his description of the perpetrator. Counsel's failure to impeach Mr. Mode with his deposition testimony, regarding the tattoo was clearly deficient performance.

Based on the substantial inconsistencies in Mr. Mode's trial testimony pertaining to the perpetrator's description, counsel had a duty to impeach his trial testimony with his deposition. Counsel is ineffective when he fails to seek impeachment of a State witness when a basis for that impeachment exist.

There was clearly a basis to seek the impeachment of Mr. Mode's, and counsel should have demonstrated to the jury that he was offering inconsistent testimony. Counsel's deficient performance in failing to impeach Mr. Mode prejudiced the Defendant because he was the victim in the case and only eye witness to the robbery, whose credibility was critical to the state's case, especially when he identified the Defendant in the show-up and in the courtroom, and stated he was 100% sure. The significant inconsistencies in Mr. Mode's testimony, especially pertaining to the description of the perpetrator, would have caused the jury to question his credibility and his version of the events in a case that turned on the credibility of that Mr.

Moode. Had the jury known that Mr. Moode only descr-
ibed the perpetrator's jacket as being black and
not that it had any stripes on it, and that Mr. Moode
had expressed some uncertainty about his identifi-
cation, and had no excuse for not noticing a tattoo,
the jury would not likely have viewed his testimony
in the same light, and there is a likelihood that
the scales would have been tipped in the Defendants
favor to result in an acquittal, especially when the
State's entire case rested on the victim's description
and identification of the Defendant, as there was no
physical evidence linking the Defendant to the offense,
no incriminating statements made by the Defendant,
and none of the stolen items we found in the Defen-
dant's possession.

    Counsel's unprofessional error so upset the advers-
arial balance between the defense and prosecution
that the trial was rendered unfair and the verdict
rendered suspect because the State's case was not
put to a meaningful adversarial test. Were not for
counsel's failure to properly impeach the victim to
attack his credibility, there is a reasonable likeli-
hood of a different outcome of the trial. Therefore,
since Strickland has been satisfied, counsel should
be deemed ineffective. In the alternative, an
evidentiary hearing is warranted because the
files, motion, and record do not conclusively
show that the Defendant is entitled to no
relief.

AO 241
(Rev. 10/07)

Page 7

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   [ ]Yes   [✗]No

(2) If you did not raise this issue in your direct appeal, explain why:

Issues of Ineffective Assistance of Counsel are not properly raised on direct appeal

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?   [

[✓]Yes   [ ]No

(2) If your answer to Question (d)(1) is "yes," state:

Type of motion or petition was filed:   Motion for post-conviction relief

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):   12CF-18454

Date of the court's decision:   11/16/21

Result (attach a copy of the court's opinion or order, if available):

denied

(3) Did you receive a hearing on your motion or petition:   in part   [✓]Yes   [ ]No

(4) Did you appeal from the denial of your motion or petition:   [✓]Yes   [ ]No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   [✓]Yes   [ ]No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

2nd D.C.A

Docket or case number (if you know):   2d 21-3879

Date of the court's decision:   12/2/22   Motion for rehearing filed 12/13/22

Result (attach a copy of the court's opinion or order, if available):   pending

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241
(Rev. 10/07)

(e) **Other Remedies:** Describe ant other procedures (such as habeas corpus, administrative remedies, ect.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:** Counsel Was Ineffective For Failing To Investigate And Call Three Material Witnesses To Testify At Trial, Which Prejudiced The Defendant.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Counsel's performance fell below the required standard of effective assistance of counsel guaranteed by the Constitution when he failed to investigate and Call the Defendant's mother Kimberly Livingston, Ricky Rogers, and Ameen Ali to testify at trial, who were known to counsel and who were available material witnesses. Counsel has a ~~____~~ bounden duty to conduct reasonable pre-trial investigation, and the standard for evaluating counsel's pre-trial investigation is reasonableness under the circumstances. (see, Attachment B)

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)     **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   [ ] Yes   [✓] No

(2) If you did not raise this issue in your direct appeal, explain why:

Issues of Ineffective Assistance of Counsel are not properly raised on direct appeal

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

[✓] Yes   [ ] No

(2) If your answer to Question (d)(1) is "yes," state:

Type of motion or petition was filed: Motion for postconviction relief

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): 12CF-18454

Date of the court's decision: 11/16/21

(see: Attachment B)

Counsel should have investigated the Defendant's defense and called Kimerly Livingston, Ricky Rogers, and Ameer Ali to testify at trial. Counsel' lack of pretrial preparation and failure to call these critical witnesses was not reasonable under the circumstances, given that the State's case rested solely on the testimony of the victim and no defense witnesses were called to rebut the victim's testimony.

The Defendant avers that counsel was fully aware of all of these witnesses because he informed him about these witnesses when he told him his version of the events. Had counsel called these witnesses to testify, they would have corroborated the Defendant's version of the events and called into question the victim's testimony.

Kimerly Livingston

Ms. Livingston would have testified consistently with her deposition that on the date of the offense, she and the Defendant left their home together in the car around 3:00 or 3:30 p.m to go to the beauty salon where she worked. He was at the salon for a short time when she sent him to Kentucky Fried Chicken to get some food and then to get some gas. He was gone for several hours and when he returned with the food, she asked him what took so long and he told her he went to Ameer Ali's house. Ms. Livingston was still not done with her client, so he waited at the salon until Ms. Livingston told him to go to the village and she would call him to pick her up when she was done. The Defendant left the salon around 7:40 to 7:45 p.m, and he was not gone very long when she received a call from Mr. Rogers that the Defendant had been arrested. Ms. Livingston

Would have testified she saw the Defendant during the relevant time frame because he was at the salon, thereby providing an alibi for the Defendant for the time period.

Ricky Rogers

Ricky Rogers would have testified he was a light-skinned African American male with shoulder length dreads with blonde tips. On the day of the offense, he had just pulled into the driveway at his house at approximately 8:00 p.m. when the Defendant pulled up in his car. The Defendant parked his car in the driveway near the mailbox as they stood outside talking for a short time when an officer drove by in a patrol car and then stopped. The officer approached them and started asking questions, and the Defendant was arrested. The victim did not get out of the patrol car, as indicated by the officer. See "att. Exhibit C, pgs 163-64. See, ~~photos~~ attached as Exhibit J, pgs 45. The Defendant told the officer he could search the car, but the officer did not. Mr. Rogers would have testified he saw the Defendant during the relevant time frame because he was in his driveway an alibi for the Defendant for the time period.

Ameer Ali

Ameer Ali would have testified the Defendant drove to his house on the afternoon of the robbery and stayed for several hours, and he left his residence around 6:00 p.m. Mr. Ali would have corroborated the Defendant's version of events provided his where-abouts for the afternoon to lend credibility to the defense.

Despite counsel's knowledge of the material involv-

ement of these witnesses, counsel failed to call them at trial, and instead told the Defendant it was not necessary to call any of his witnesses because the State was going to drop the charges based on his passing of a polygraph test. Although the State took Ms. Livingston's deposition, counsel called Mr. ~~Anthony Livingston~~ and informed him that he did not need to show up for his deposition. Counsel's deficiency in omitting their testimony severely prejudiced the Defendant, especially in the light of the evidence and arguments presented by the State. The State's case consisted of only the victim's testimony and tainted identification of the Defendant in what amounted to a one person show-up, as the State had no physical evidence linking the Defendant to the offense, the Defendant made no incriminating statements to the police, and the Defendant was not found in possession of any of the stolen property.

Thus, the testimony of the witnesses would have provided an alibi for the Defendant on at the time of the offense and corroborated his theory of defense of mistaken identity, and would have rebutted the victim's testimony and the State's theory that the Defendant was the perpetrator. All of this testimony would have put the State's case in a whole different light by introducing reasonable doubt as to the victim's version of the events. Thus, the Defendant suffered prejudice due to counsel's ineptitude.

Counsel's unprofessional error in not calling these witnesses so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.

The testimony of the witnesses would have likely re-sulted in a different outcome of the trial because the only evidence implicating the Defendant as the perpetrator was the victim's testimony, and the witnesses testimony would have certainly tipped the scales in the defense's favor to result in an acquittal.

Therefore, because both prongs for ineffect-iveness under Strickland have been satisfied, the Defendant respectfully resquests that this Court find that counsel is ineffective and grant a new trial.

AO 241
(Rev. 10/07)

Result (attach a copy of the court's opinion or order, if available):

denied

(3) Did you receive a hearing on your motion or petition:          [✓]Yes  [ ]No

(4) Did you appeal from the denial of your motion or petition:     [✓]Yes  [ ]No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  [✓]Yes  [ ]No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

2nd D.C.A

Docket or case number (if you know): 2d 21-3879

Date of the court's decision: 12/2/22 motion for rehearing filed 12/13/22 pending

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) Other Remedies: Describe ant other procedures (such as habeas corpus, administrative remedies, ect.) that you have used to exhaust your state remedies on Ground Two:

GROUND THREE: Counsel was ineffective for failing to file a motion to suppress the victim's out-of-court and in-court identification of the Defendant, which prejudiced Defendant.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel's performance fell below the required standard of effective assistance of Counsel guaranteed by the Constitution when he failed to file a Motion to Suppress the victim's identification was the result of unnecessarily suggestive procedures by law enforcement, which led to a mistaken identification.

During the trial, the victim reported that he had been attacked by five or six men who punched him in the face and repeatedly hit him in the head; he was dizzy and did not remember how he got home. He stated about 40 minutes after the incident, law enforcement drove him back to the area in a patrol car where the first person he saw on the street with dreads was the Defendant, and he indentified him as the perpetrator in what amounted to an unduly suggestive one man show-up.

The test for suppressing an out-of-court or in-court identification is: (1) whether the State used an "unnecessarily (see attach C)

(see:
    Attach. C)

suggestive procedures to obtain the out-of-court
identification," and (2) whether that procedure "gave
rise to a substantial likelihood of irreparable mis-
identification.

   The factors to consider in evaluating the likeliho-
od of misidentification are: (1) the opportunity of
the witness to view the criminal at the time of the
crime (2) the witness' degree of attention; (3) the
accuracy of the witness' prior description of the
criminal; (4) the level of certainty demonstrated
by the witness at the confrontation; and (5) the
length of time between the time of the crime and
the confrontation.

   In the present case, the victim's identification was
tainted because Deputy Lucius used an unnecessarily
suggestive procedure to obtain the out-of-court
identification by driving the victim to the area
for essentially a one man show-up, instead of show-
ing the victim a photo pack containing other men
with similar characteristics to determine whether
the victim could pick out the perpetrator. The
Deputy's procedure gave rise to a substantial lik-
elihood of irreparable misidentification because the
victim only had a limited opportunity to view the
perpetrator in a traumatic situation where there
were a group of other black males surrounding
the victim at night in an area that was not well
lit. The victim stated the nearest lamppost was
about 10 feet away and was behind the perpetrator,
such that the perpetrator's face was not illuminated.
He stated he was nervous, scared, and had a panic
attack during the altercation. He only focused on the
perpetrator for two to three seconds, as the conversa-

tion with the perpetrator only lasted a few seconds, but the altercation itself lasted a couple of minutes. However, during the altercation, the victim's attention would not have been focused on the perpetrator because he was being hit by numerous people and pushed to the ground. Although the perpetrator was only a couple of feet away from him, the victim did not recall or mention that the perpetrator had any scars or tattoos on his face, or a mustache or a beard; however, the Defendant did have those distinctive facial features. Although the victim gave a description of the perpetrator, there was heavy foot traffic in that area that night, and the description was a common one for that ~~that~~ neighborhood. About 40 minutes had elapsed between the offense and the one man show-up that led to the identification, and it was the Deputy who asked him if he was 100% sure it was the person, and he parroted the Deputy's question.

Thus, based on the factual circumstances, there was a meritorious legal basis for Counsel to have filed the Motion to Suppress to allow the court the opportunity to determine that the show-up was impermissibly suggestive in violation of constitutional principles; however, counsel chose not to do so to the Defendant's detriment. Counsel's deficient performance prejudiced the Defendant because there was a reasonable likelihood that the Defendant's identification would have been suppressed, thereby removing from the jury evidence that the victim made an out-of-court identification, and because of the tainted identification, the victim would have also been prevented from making an in-court identifica-

tion. As it were, the victim's identification was a critical part of the State's case that led to the Defendant's conviction, as evidenced by the State's closing argument focusing on the identification.

It was not a reasonable trial strategy for counsel to forego obtaining a legal ruling by the court on this issue, knowing that the identification was a central part of the State's case. It was far more damaging for the jury to have heard that the victim identified the Defendant, and no reasonable counsel would have allowed the jury to hear that evidence when given the opportunity to have it suppressed. Counsel's unprofessional error set forth in this ground so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.

Therefore, since Strickland has been satisfied, counsel should be deemed ineffective. In the alternative, a hearing is warranted because the files, motion, and record do not conclusively show the Defendant is entitled to no relief.

AO 241
(Rev. 10/07)

(b) If you did not exhaust your state remedies on Ground Three, explain why:

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  [ ]Yes    [√]No

(2) If you did not raise this issue in your direct appeal, explain why:

Issues of Ineffective Counsel are not raised on direct appeal

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

[√]Yes    [ ]No

(2) If your answer to Question (d)(1) is "yes," state:

Type of motion or petition was filed:  Motion for postconviction relief

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):  12CF-18454

Date of the court's decision:  11/16/21

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition:     [ ]Yes    [√]No

(4) Did you appeal from the denial of your motion or petition:     [ ]Yes    [ ]No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     [ ]Yes    [ ]No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

2nd D.C.A

Docket or case number (if you know):  2d21-3879

Date of the court's decision:  12/2/22  Motion for rehearing filed 12/13/22 pending.

Result (attach a copy of the court's opinion or order, if available):

AO 241
(Rev. 10/07)

(7) If your answer to Question ( d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies**: Describe ant other procedures (such as habeas corpus, administrative remedies, ect.) that you have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:** Counsel was ineffective for failing to enforce the agreement with the State to dismiss the charge based upon Defendant passing a polygraph test, which prejudice

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Defendant,

- Trial counsel's performance fell below the required standard of effictive assistance of counsel guaranteed by the Constitution when he failed to request specific performance to enforce the agreement with the State to dismiss the charge if he passed a polygraph test.
    The Defendant asserts that prior to trial, he asked the (see; attach P.)

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    [ ]Yes    [✓]No

(2) If you did not raise this issue in your direct appeal, explain why:
        Issues of Ineffective ~~couns~~ Assistance of Counsel are not raised on direct appeal.

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
        [✓]Yes    [ ]No

(2) If your answer to Question (d)(1) is "yes," state:
Type of motion or petition was filed: motion for postconviction relief

(See; Attach. D)

State Attorney if he took a polygraph test and passed would she drop the charge, and she said "yes," but that the State would not pay for the test. The Defendant told her that he would pay for the test. She made no mention of needing approval from anyone to drop the charge, and the only condition was that the Defendant pass the test. Thus, the State entered into an agreement with the Defendant to dismiss the charge if he agreed to take a polygraph test and if he passed the test. The Defendant took the polygraph and he passed it; the results came in before jury selection. Counsel kept emailing the State regarding dismissing the charge, and on the morning of trial the Defendant heard counsel arguing with the State about it. The prosecutor grabbed the Defendant's hand and said she was sorry but her supervisor would not allow her to drop the charge. The agreement had already been made between the Defendant and the prosecutor, and this was the first mention of the supervisor by the prosecutor. Thus, the State breached it's agreement with the Defendant and instead proceded with the prosecution.

On August 8, 2013, counsel filed a Motion to Continue Sentencing asserting the Defendant "has previously passed an independent polygraph examination exonerating him; prior to taking that polygraph examination, ▓▓▓▓▓ FREDRICK LIVINGSTON offered to take a polygraph of the prosecutor's choosing and he would stipulate to the results in court." See, Exhibit G. Thus, counsel was clearly aware of the polygraph and the reason the Defendant agreed to do it.

During the sentencing hearing, Ms. Living-
ston mentioned to the court that the Defendant
had passed a polygraph test. See, Exhibit H, pg. 231.
The Defendant provided a letter to the court at
sentencing regarding the polygraph, where he info-
rmed the court that he had passed a polygraph.
examination, and the prosecutor was in an agreement
to dismiss the charge but the supervisor did
not uphold the agreement. See, Letter, attached as
Exhibit I. The State objected that the letter was
improper and misleading. The Court commented
that the Defendant's statement at sentencing
was not strictly evidentiary in nature, and it would
not be considered for an evidentiary purpose. The
Defendant then verbally informed the court that
he had passed a polygraph test, and he did not
commit the crime. When the State brought up the
polygraph again, the judge commented he was not
allowed to pay attention to it. See, Exhibit H,
pgs. 235-37.

Although the court could not consider the res-
ults of the polygraph test at sentencing, counsel had
a duty to request the specific performance of the
agreement by the State. The Defendant asserts
that this situation is analogous to a cooperation
agreement or substantial assistance agreement
with the State. If a prosecutor makes a coop-
eration agreement or substantial assistance agree-
ment with a defendant and breaches the agreement,
specific performance is the appropriate remedy
because these agreements are interpreted accord-
ing to principles of contract law.

When a defendant contends that the government

has breached a cooperation agreement, if the defendant makes a threshold showing, an evidentiary hearing may be appropriate for the court to see if the government has lived up to its end of the bargain and whether the government acted fairly and in good faith. Likewise, where the State fails to keep a commitment concerning a sentence recommendation on a guilty plea, the court would determine whether specific performance should be ordered.

In the present case, although it did not involve a guilty plea, the prosecutor nonetheless made an agreement with the Defendant that if he subjected himself to a polygraph test at his own expense and passed, then she would dismiss the charge. Thus, the Defendant was induced by the State's unkept promise to waive his constitutional right to remain silent and to subject himself to a polygraph test. The only condition precedent to the State upholding her end of the bargain was for the Defendant to pass the test, which he did. However, the State breached the agreement when she continued with the prosecution, and the Defendant was entitled to specific performance of the agreement to dismiss the charge. Therefore, counsel's performance in failing to enforce the agreement was deficient.

Counsel's unprofessional error set forth in this ground so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. Were it not for counsel's failure to enforce the States agreement, there is a reasonable likeli-

hood of a different outcome because the change would have been dismissed. Therefore, since Strickland has been satisfied, counsel should be deemed ineffective. In the alternative, an evidentiary hearing is warranted because the files, motion, and record do no conclusively show that the Defendant is entitled to no relief.

AO 241
(Rev. 10/07)

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): 12CF-18454

Date of the court's decision: 11/16/21

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition:          [ ]Yes  [✓]No

(4) Did you appeal from the denial of your motion or petition:     [ ]Yes  [ ]No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   [ ]Yes  [ ]No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

2nd D.C.A

Docket or case number (if you know): 2d21-3879

Date of the court's decision: ~~2d21-3879~~ 12-2-22 Motion for rehearing filed

Result (attach a copy of the court's opinion or order, if available): 12-13-22 pending.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies**: Describe ant other procedures (such as habeas corpus, administrative remedies, ect.) that you have used to exhaust your state remedies on Ground Four:

<u>Ground Five</u>:

THE CUMULATIVE EFFECT OF COUNSEL'S DEFICIENT PERFORMANCE PREJUDICED THE DEFENDANT.

(a) <u>Supporting facts</u>:

In the present case, the Defendant asserts that the total impact of all of counsel's errors when combined produced a fundamentally flaw-ed trial, and that the court should consider the cumulative effect of all the errors. A cum-ulative-error analysis merely aggregates all the errors that have been found to be harm-less, and therefore not reversible, and it analyzes whether their cumulative effect on the trial is such that collectively they can no longer be considered harmless.

Even if no single error were sufficiently prejudicial, the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the sa-me extent as a single reversible error. Viewed in the aggregate, the errors identi-fied above sufficiently prejudiced the Defe-ndant so as to undermine confidence in the jury's verdict. Therefore, the court should find that counsel was ineffective and grant the Defendant a new trial.

WHEREFORE, the Defendant respectfully request this Court vacate the judgement and sentence due to the Defendant's attorney rendered ineffective assistance. Moreover, there is reasonable probability that, but for counsel's cumulative unprofessional errors,

the result of the proceeding would have been different. In the alternative, the Defendant respectfully requests an evidentiary hearing on the claims raised in this Motion.

(b)

(c) Direct Appeal Of Ground Five:
(1) If you appealed from the judgement of conviction, did you raise this issue?
☒ NO.

(2) If you did not raise this issue in your direct appeal, explain why?
Issues of Ineffective Assistance of Counsel are not raised on direct appeal.

(d) Post-Conviction Proceedings:
(1) Did you raise this issue through a post-conviction or petition for habeas corpus in a state trial court?
Yes.

(2) Type of Motion or petition was filed:
Motion for post-conviction relief.

Docket or case number:
12CF-18454
Date of court's decision:
11/16/21
Result: Denied.

(3) Did you receive a hearing on your motion or petition?
☒ Yes.

(4) Did you appeal from the denial of your motion or petition?
Yes.

(5) Did you raise this issue in the appeal?
    Yes.

(6) Name and location of the court where
    the appeal was filed?
        2nd D.C.A
    Docket or Case number?
        2d21-3879

    Date of the Court's decision?
        12/2/22
    Motion for rehearing filed 12/13/22
        pending.

(7)

(e)

Ground Six:

THE LOWER COURT ABUSED ITS DISCRE-
TION IN ALLOWING THE STATE TO EX-
ERCISE A PPOPEREMPTORY STRIKE ON
A MINORITY JUROR WHEN THE RACE NE-
UTRAL REASON WAS PRETEXTUAL AND THE
COURT FAILED TO CONDUCT AN ADEQUATE
GENUINENESS ANALYSIS ACCORDING TO
MELBOURNE V. STATE, 679 SO. 2D 759
(FLA. 1996)

(a) Supporting facts:

(b) If, you did not exhaust your state remedies on Ground Six, Exxplain why?

(c) Direct Appeal on Ground Six?

(1) If you appealed from the judgement of conviction, did you raise this issue? Yes

(2) If you did not raise this issue in your direct appeal, explain why?

(d) Post-Conviction Proceedings?

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

(2) If your answer to Question (d)(1) is "yes", state? Type of Motion or petition was filled?

Name and location of the court where the motion or petition was filed?

Docket or case number?

Date of the Courts decision?

Result?

(3) Did you receive a hearing on your motion or petition?

(4) Did you appeal from the denial of your motion or petition:

(5) If yes, did you raise this issue in the appeal?

(6) state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result:

(7) If "NO", explain why you did not raise this issue:

(e) Other Remedies:

Ground Seven:
THE LOWER COURT ERRED IN DENYING
APPELANT'S MOTION FOR JUDGEMENT
OF ACQUITTAL WHEN THE STATE'S
EVIDENCE WAS INSUFFICIENT TO
SUPPORT A CONVICTION FOR ROBBERY

(a) Supporting Facts:

(b) If you did not exhaust your state remedies on Ground Seven, explain why:

(c) Direct Appeal on Ground Seven:

(i) If you appealed from the judgement of conviction, did you raise this issue?

Yes

(2) If you did not raise this issue in your direct appeal, explain why:

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post conviction motion or petition for habeas corpus in a state trial court?

(2) If "yes," state:
    Type of Motion or Petition was filed:

    Name and location of the court where the motion or petition was filed:

    Docket or case number?

    Date of courts decision:

    Result:

(3) Did you receive a hearing on your motion or petition:

(4) Did you appeal from the denial of your motion or petition?

(5) If yes, did you raise this issue in the appeal?

(6) State:

Name and location of the court where the appeal was filed?

Docket / Case number:

Date ~~and~~ of the Courts decision:

Result:

(7) If "No", explain why did not raise this issue:

(e) Other Remedies:

Ground Eight:

THE LOWER COURT ERRED IN DENYING THE MOTION FOR NEW TRIAL WHEN THE COURT ERRED IN ALLOWING THE STATE TO INTRODUCE HEARSAY EVIDENCE FROM LAW ENFORCEMENT REGARDING THE VIC- TIM'S DESCRIPTION OF THE SUSPECT AND WHEN THE PROSECUTOR IMPROPERLY TOLD THE JURY DURING CLOSING THAT COUNS- EL HAD CONCEDED A ROBBERY ~~THAT~~ HAD OCCURRED.

(a.) Supporting Facts:

(b) If you did not exhaust your state remedies on Ground Eight, explain why?

(c) Direct Appeal on Ground Eight:

(1) If you appealed from the judgement of conviction, did you raise this issue?
YES

(2) If you did not raise this issue in your direct appeal, explain why?

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

(2) If "yes", state?
Type of motion or petition was filed:

Name and location of the Court where the motion or petition was filed?

Docket/Case number?

Date of Courts Decision?

Result?

(3) Did you receive a hearing on your motion or petition:

(4) Did you appeal from the denial of your motion or Petition:

(5) If yes, did you raise this issue in the appeal?

(6) State:

Name and location of the Court where the appeal was filed:

Docket or Case number:

Date of the Courts decision

Result:

(7) IF "No", explain why you did not raise this issue:

(e) Other Remedies:

Ground Nine:
Counsel was Ineffective for failing to file a Notice of Appeal timely.

(a) supporting facts:

Counsel's performance fell below the required standard of effective assistance of counsel when he failed to file a Notice of Appeal timely.

The Defendant asserts while assigned to as counsel, Mr. Lombardo, untimely filed a notice of a Appeal 42 days after a verdict was rendered. Counsel had a legal basis to file a notice of Appeal and should have done such. The Defendant filed a Pro se motion, Motice of Appeal timely, ~~the~~ meeting the require time bar ~~already.~~ showing counsel deficient performance.

AO 241
(Rev. 10/07)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state curt having jurisdiction?        [✓]Yes    [ ]No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, ground or grounds have not been presented, and state your reasons for not presenting them:    NO

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?        [ ]Yes    [✓]No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of ant court opinion or order, if available.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in a court, either state or federal, for the judgment you are challenging:        [✓]Yes    [ ]No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

2nd D.C.A
motion for rehearing pending
Appeal from the denial of 3,850 on
issues 1-5.

AO 241
(Rev. 10/07)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you
are challenging:

(a) At preliminary hearing:    Peter Lombardo, P.A

(b) At arraignment and plea:    Peter Lombardo, P.A

(c) At trial:    Peter Lombardo, P.A

(d) At sentencing:    Peter Lombardo, P.A

(e) On appeal:    Peter Lombardo, P.A

Deana K. Marshall, P.A

(f) In any post-conviction proceeding:    Deana K. Marshall, P.A

(g) On appeal from ant ruling against you in a post-conviction proceeding:

Deana K. Marshall, P.A.

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?

[✓]Yes    [ ]No

(a) If so, give name and location of court that imposed the other sentences you will serve in the future:

Middle district of Fla

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:    2 years

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?

[ ]Yes    [✓]No

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year age, you must explain the one-year
statute of limitations as contained in 28 U.S.C.§ 2244(d) does not bar your petition*    its timely

_____

*  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides that:
(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to
the judgment of a State court. The limitation period shall run from the latest of--
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking
such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws
of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been
newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise
of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the
pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

AO 241
(Rev. 10/07)

Page 15

There, petitioner asks that the Court grant the following relief: The petitioner ask the Court reverse and remand for a for relief to new trial.

or any other relief to which petitioner may be entitled.

_____
**Signature of Attorney (if any)**

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on __1-7 1-23__ (moths, date, year).

Executed (signed) on __1-11-23__ (date).

_____
**Signature of Petitioner**

If the person signing is not petitioner, state relationship to the petitioner and explain why the petitioner is not signing this petition.